**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| LYNN ANDERSON, and LISSETTE MALDONADO PADILLA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br><br>THE KROGER CO.,<br><br>        Defendant. | Civil Action No.: 1:26-cv-419<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Lynn Anderson and Lissette Maldonado Padilla ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against The Kroger Co. ("Kroger" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**<u>NATURE OF THE ACTION</u>**

1.      It is both unfair and unlawful for entities like Kroger to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" under the Kroger Health and Welfare Benefit Plan ("Plan"), without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs only if participants are offered a clearly disclosed, reasonable alternative standard that allows *every* similarly situated individual to obtain "the same, full reward," including retroactive refunds for surcharges paid while completing

1

that alternative. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). A single defect, whether in design, timing, or disclosure, can disqualify a program from ERISA's statutory safe harbor, rendering the wellness program noncompliant and the surcharge discriminatory.

2.      Kroger's program fails that test. There is no mention of the tobacco surcharge wellness program in the Company's Summary Plan Description ("SPD"), even though this is a core term that impacts premiums, which the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments"), have said must be included. Instead, information about the tobacco surcharge appears only in the Benefits Resource Guide ("BRG"). Critically, the BRG describes the surcharge program in permissive language and imposes timing restrictions that directly violate ERISA's "full reward" requirement.

3.      Kroger's BRG states that participants who complete the Quitting Tobacco Journey program "*may* also receive a refund" of surcharges paid. In other words, it treats refunds as discretionary rather than mandatory. Worse, Kroger arbitrarily and unreasonably limits participants to receiving a refund only if they complete the program within 90 days of enrollment. As a result, participants are forced to speed through the program and two similarly situated participants who complete the same reasonable alternative standard in the same plan year can receive entirely different economic outcomes: one who completes the program within 90 days receives the full reward, while one who completes it later receives less, or nothing at all. That is precisely the type of unequal, discriminatory treatment Congress sought to prohibit when it required that the "full reward" be made available to "all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(D). The statute does not authorize employers to create two classes of similarly situated participants—those who receive the full reward and those who do not—based solely on an arbitrary timing cutoff. That is precisely what the "full reward" rule is meant to prevent: the

2

value of what participants receive. And by designing and administering a program that fails to provide those who complete an alternative standard with the full reward, Kroger has failed to satisfy the conditions required to take advantage of ERISA's narrow wellness-program exception.

4.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements. Moreover, while courts are no longer required to defer to an agency's interpretation of an ambiguous *statute* under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts must still defer to an agency's interpretation of its own *regulations*, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework. *Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 588 U.S. 558 (2019).

5.      ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan fails these requirements in two critical ways: (1) it imposes an unreasonable 90-day completion deadline for the Quitting Tobacco Journey program, and (2) it states that participants who complete the program "may" receive a refund of surcharges paid, rather than guaranteeing the "full reward" as required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). These deficiencies unlawfully shift costs onto employees in violation of ERISA's wellness program regulations.

6.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

7. Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual participating in the program* should be able to receive *the full amount of any reward or incentive* . . . ." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to provide a reasonable alternative standard that provides full reimbursement to all employees who complete it, operating

---

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual* as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants, in key, participant-facing documents, of all the avenues available to them to avoid the surcharge. *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

8. Defendant cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, Kroger fails to operate a compliant wellness program or provide proper notice to participants. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*Id.*, 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. This is not a flexible standard; it is a strict exception that allows employers to discriminate against participants by charging them hundreds of dollars annually. Therefore, even minor design or disclosure defects can remove the program from the narrow safe harbor and render the surcharge unlawful.

9. The core deficiency of Defendant's wellness program is that it does not offer a reasonable alternative standard that makes available the "full reward" to ***all*** participants who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). While the Plan offers a smoking cessation program, it imposes arbitrary timing conditions that impact the value of what participants receive upon completion. The DOL has expressly rejected this kind of timing-based conditioning of the reward for outcome-based wellness programs. Federal rules require that every similarly situated individual who completes a reasonable alternative standard receive the "same, full reward" for the plan year, even if the alternative is satisfied midyear. Making the size or availability of the reward depend on when during the plan year the individual finishes the program—by limiting relief to prospective removal of the surcharge—violates those requirements. Defendant's policy is exactly that: participants who

miss the initial 90-day completion deadline receive no make-whole relief and are denied "the same, full reward" provided to other similarly situated individuals. This is per se noncompliant.

10.     This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. This type of discrimination is permissible only if employers meet ERISA's strict wellness program criteria, which Defendant does not. Because Kroger seeks to take advantage of an affirmative defense allowing for discriminatory surcharges, it bears the burden of proving that its tobacco surcharge wellness program fully complies with *every* requirement under ERISA, including making available a reasonable alternative standard that ensures that *all* participants who satisfy an alternative standard receive the full reward. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'"). No amount of *post hoc* justifications can cure this fundamental defect. Defendant's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

11.     Participants like Plaintiffs are entitled to challenge arbitrary restrictions Defendant imposes on access to the "full reward." Where participants are not afforded a meaningful opportunity to avoid the surcharge through a reasonable alternative standard, ERISA must provide a mechanism for review. Once a participant plausibly alleges that a surcharge violates ERISA's anti-discrimination provisions and pleads facts showing deficiencies in the wellness program, the burden shifts to the employer to demonstrate that its program fully complies with all statutory and regulatory requirements, including the obligation to make the "full reward" available and to

provide adequate notice of that opportunity. Here, Defendant requires participants to complete the program within just three months, a timeframe that is not only unreasonably short, but creates a very real risk that participants who make every effort to comply, yet miss the deadline by even a single day, receive nothing at all. In that circumstance, participants who completed the same program, expended the same effort, and devoted the same resources are treated in starkly different economic terms based solely on an arbitrary cutoff date for which there is no grounding in the law. ERISA does not permit employers to impose arbitrary timing restrictions that divide similarly situated participants into economic winners and losers.

12.     Plaintiffs are employees of Kroger who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiffs and continues to impose such a burden on those similarly situated.

13.     Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Kroger from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Kroger is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

14.     Plaintiff Lynn Anderson is, and at all times mentioned herein was, an individual citizen of the State of Utah residing in West Valley City, Utah.

15.     Plaintiff Lissette Maldonado Padilla is, and at all times mentioned herein was, an individual citizen of the State of Ohio residing in Columbus, Ohio.

16.     Plaintiffs are or were employees of Kroger who paid a tobacco surcharge. Plaintiffs were required to pay this tobacco surcharge to maintain health insurance under the Plan. Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

17.     Defendant The Kroger Co. is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 1014 Vine Street, Cincinnati, Ohio 45202. Kroger operates a chain of supermarkets and retail stores offering groceries, pharmacy services, and general merchandise throughout the United States, with nearly 2,800 stores in 35 states and annual sales of more than $130 billion, ranking it as one of the world's largest retailers. Kroger is the administrator and sponsor of the Plan. The Plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

18.     At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. As of December 31, 2024, the Plan had more than 65,000 participants.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in Ohio.

21.    Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

### I.  DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

22.    To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

23.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

24.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to

"prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

25.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

26.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

27.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if **all** of the [] requirements are satisfied*.").

### B.  Regulatory Criteria

28.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. 29 C.F.R. § 2590.702(f)(4)(ii).

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who

does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

29. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

30. Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." 78 Fed. Reg. at 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

31. A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should

13

be able to receive the *full amount of any reward or incentive*. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is *mandatory*, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year*. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) *as long as . . . the individual receives the full amount of the reward*.

Final Regulations, 33163 (emphases added).

32.     The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

33.     For health contingent wellness programs, the Final Regulations require the notice be disclosed "in *all* plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD),

as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of their rights in *all* plan materials violate the notice rule.

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

34.     Defendant's tobacco surcharge is discriminatory because Defendant fails to make available a compliant wellness program that would allow *all* participants paying the surcharge to obtain the full reward. Kroger imposes a $75 per month tobacco surcharge on participants (and their spouses or domestic partners) who use tobacco and are enrolled in the Plan.

35.     The SPD does not mention the tobacco surcharge or describe any reasonable alternative standard for avoiding or recouping it. Instead, the tobacco surcharge program is described only in the BRG, which states: "If you or your spouse or domestic partner use tobacco products, you may participate in the Quitting Tobacco Journey program offered by Magellan. If you or your spouse or domestic partner use tobacco products and timely complete (90 days from enrollment) the Quitting Tobacco Journey program, you will not have to pay the $75 per month per tobacco user surcharge. You may also receive a refund of any monthly surcharge you paid during the year."

36.     This language violates ERISA's wellness program requirements in two fundamental ways. First, the BRG imposes an unreasonably short 90-day completion deadline for the Quitting Tobacco Journey program. Tobacco cessation is a medically complex process that often requires multiple attempts. Federal regulations require that wellness programs be "reasonably designed to promote health or prevent disease," 29 C.F.R. § 2590.702(f)(4)(iii), and conditioning the full reward on completing a cessation program within 90 days of enrollment is

15

not reasonably designed to help participants succeed; rather, it is designed to minimize the number of participants who qualify for relief. Second, and most critically, the BRG states that participants who complete the program "may also receive a refund" of surcharges paid. This discretionary language contradicts ERISA's requirement that the "full reward" must be "available to all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(D); 45 C.F.R. § 146.121(f)(4)(iv). The statute does not permit plans to make refund amounts discretionary; it requires that every participant who completes a reasonable alternative standard receive the same, full reward.

37.     The use of "may" rather than "will" or "shall" is not a drafting oversight; it communicates to participants that refunds are discretionary, contingent on Kroger's approval, or otherwise uncertain, because they are. Participants reading this language would reasonably conclude that completing the Quitting Tobacco Journey program does not guarantee a refund of surcharges already paid. This ambiguity is precisely what ERISA's wellness program regulations are designed to prevent, as the Departments made clear, it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every* individual participating in the program should be able to receive the full amount of any reward or incentive." Final Regulations, 33160 (emphasis added). By stating that participants "may" receive a refund, Kroger's BRG fails to guarantee the full reward to all those who complete an alternative standard.

38.     The BRG's language creates substantial confusion and practical deterrence regarding the 90-day completion requirement and refund eligibility. The BRG expressly states that participants may recover previously deducted surcharges only if they "timely complete (90 days from enrollment)" the program. That requirement discourages participation from the outset. And, while nothing prohibits an employer from requiring participants to *enroll* within a reasonable window of time, ERISA does not permit employers to impose arbitrary, rigid, and unreasonable

16

completion deadlines that deprive participants of the "full reward" despite successful completion of the reasonable alternative standard during the same plan year. ERISA does not permit two participants in the same Plan year to expend the same effort, and successfully complete a reasonable alternative standard, and have one receive nothing solely because of when they completed the program.

39.    Taken together, Defendant's tobacco surcharge program is structured and communicated as a punitive premium differential that imposes an unreasonable 90-day completion deadline for the cessation program and fails to make available the full reward to *all* participants who complete the alternative standard. Federal law requires that "every individual participating in the program should be able to receive the full amount of any reward or incentive," without diminution based on when during the plan year the alternative is satisfied. Final Regulations, 33160. Kroger's program cannot be squared with those requirements.

40.    Defendant should not have imposed an arbitrary and unreasonable time limit that results in some participants successfully completing the reasonable alternative standard and yet not receiving the "full reward." Had Kroger intended to encourage early enrollment and timely completion, it could have imposed a reasonable *enrollment* deadline, requiring participants to enroll by a certain date while still allowing them until the end of the Plan year to complete the program and receive the same full reward available to all other similarly situated participants. Instead, Kroger chose to impose a rigid 90-day *completion* deadline that ensures some participants who complete the Quitting Tobacco Journey program receive less, or nothing at all, solely because of when they complete the program during that Plan year.

41.    Defendant likewise should not have used discretionary language that leaves participants uncertain as to whether they will receive the full reward upon completion of the

17

alternative standard. Had Kroger stated that participants "will" or "shall" receive a refund upon completing the Quitting Tobacco Journey program, participants would have clear assurance of their rights. Instead, the BRG's decision to use "may" communicates that Kroger retains discretion to deny refunds even to participants who complete alternative standards. That further deters participation by instilling uncertainty as to whether the effort required to complete the program will result in any financial benefit. In short, Kroger was required to guarantee the "full reward" to participants who complete an alternative standard, but it was prevented from doing so because of its arbitrary timing restriction that creates two classes of participants: those who receive the full reward and those who receive less or nothing despite making the same effort and satisfying the same alternative standard. That violates ERISA's "full reward" rule. 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv).

42. Because Defendant cannot satisfy the statutory and regulatory criteria that "must be satisfied" to qualify for the statutory safe harbor for health-contingent wellness programs, its tobacco surcharge is unlawful and discriminatory under ERISA. Kroger's decision to not include a core term that impacts participants' premiums in the SPD, and its decision to use discretionary "may" language in the BRG regarding refunds, combined with the unreasonable 90-day completion deadline that treats similarly situated individuals differently by failing to provide the full reward to all those who satisfy an alternative standard, disqualified it from taking advantage of the statutory safe harbor. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

## III. DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

43. Defendant Kroger administered the tobacco surcharge by designating which participants would be charged and withholding the surcharge directly from participants' paychecks

as a before-tax plan contribution, alongside required employee premium deductions. These deductions are part of the same funding stream that supports the Plan's medical benefits—not a separate penalty—and are treated identically to other participant contributions under the Plan's payroll and trust-funding structure.

44.     The Plan's SPD confirms that participant amounts are withheld as before-tax plan contributions, stating that "[y]ou and the Plan Sponsor share in the cost of the Plan" and that "[y]our contributions are deducted from your paychecks on a before-tax basis." The tobacco surcharge at issue here was withheld through the same payroll mechanism, on the same before-tax basis, and was treated identically to Plaintiffs' other required premium deductions.

45.     The Plan's SPD expressly provides that the Plan is "Self-Funded" and that "the Plan Sponsor, on behalf of the Plan, has the sole responsibility to pay, and provide funds, to pay for all Plan benefits." It further provides that "[t]he Plan Sponsor is solely responsible for the benefit plan design and funding payment of Benefits." The Plan is funded through a combination of employer payments and required participant contributions: the SPD acknowledges that participant amounts "are used to partially reimburse the Plan Sponsor for service fees under the Plan," and that "[b]enefits under the Plan are funded by the payment of service fees required by the Plan Sponsor." Once those participant amounts are withheld from wages, they constitute Plan assets under 29 C.F.R. § 2510.3-102 and must be administered "solely in the interest" of participants and beneficiaries under 29 U.S.C. § 1104(a)(1).

46.     On information and belief, Kroger failed to deposit the tobacco-surcharge amounts into the Plan's assets in full and/or used those amounts to offset, dollar-for-dollar, its own required company contributions. Because the cost of coverage is fixed by tier, every surcharge dollar collected reduced Kroger's own funding obligation instead of augmenting the Plan's assets. The

offset mechanism Plaintiffs challenge is reflected in the Plan's own funding description, which acknowledges that required participant amounts "are used to partially reimburse the Plan Sponsor for service fees under the Plan" and that "[b]enefits under the Plan are funded by the payment of service fees required by the Plan Sponsor." Because the Plan's benefits are funded through Kroger's payment of service fees, and because required participant contributions directly reimburse Kroger for those same service fees, every dollar Kroger collected from Plaintiffs as a tobacco surcharge directly reduced the amount Kroger was required to pay from its own corporate assets to satisfy its funding obligation under the Plan. In operation, therefore, the surcharge did not add a third stream of Plan funding; it shifted a portion of Kroger's "sole responsibility to pay, and provide funds, to pay for all Plan benefits," onto the participants from whom it was collected.

47.     This practice constitutes classic self-dealing and a prohibited transaction under ERISA §§ 404 and 406. By diverting or offsetting participant contributions for its own benefit, Kroger dealt with Plan assets in its own interest and for its own account. The surcharge proceeds that should have been transmitted to and retained by the Plan instead reduced Kroger's out-of-pocket funding obligations and generated float and interest income for the company's own accounts. In doing so, Kroger failed to act solely in the interest of participants and beneficiaries and violated its fiduciary duties of loyalty, prudence, and adherence to Plan documents.

48.     Kroger's conduct departs from the affirmative funding duty set out in the Plan's governing documents. The SPD imposes on Kroger, as Plan Sponsor, the "sole responsibility to pay, and provide funds, to pay for all Plan benefits," and describes the Plan as a "Plan Sponsor-funded benefit plan[]."By collecting the unlawful surcharge from Plaintiffs' wages and applying those amounts to reduce the service fees Kroger would otherwise owe under the Plan, Kroger used participant contributions, which became Plan assets upon withholding, to satisfy, in part, a funding

obligation the Plan's documents impose solely on Kroger. That is self-dealing with Plan assets in violation of ERISA §§ 404(a)(1)(A) and 406(b)(1), 29 U.S.C. §§ 1104(a)(1)(A), 1106(b)(1).

49. Even apart from this diversion, Kroger separately breached its fiduciary duties through the administration of the tobacco-surcharge program itself. The program fails to clearly make available the "full reward" to participants who complete a cessation program, offers only unclear relief for participants who complete a cessation program mid-year, and omits required disclosures from the materials participants actually rely on during enrollment. By maintaining and communicating a noncompliant wellness program, and by failing to monitor the terms of the Plan and the wellness program, and correct these defects, Kroger acted imprudently and misled participants about their rights under ERISA.

50. By collecting surcharge amounts from participants and applying them to reduce its own funding obligation rather than transmitting them to the Plan or using them to offset premiums of non-tobacco-using participants, Kroger retained in its own corporate accounts dollars that, under the Plan's funding structure, should have either boosted the Plan's resources or reduced participants' cost of coverage. During the time those funds were held in Kroger's accounts, they generated float and interest for Kroger's own benefit rather than the Plan's, further confirming that Kroger acted in its own interest and not "solely in the interest" of participants as ERISA § 404(a)(1) requires.

**CLASS DEFINITION AND ALLEGATIONS**

51. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure.

52. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

21

**Tobacco Surcharge Class**

All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

53. Excluded from the Class are Kroger's officers and directors.

54. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

55. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

56. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

57. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which all similarly situated participants receive the "full reward";

c. Whether Defendant provided proper notice in *all* the plan materials describing the surcharge;

d. Whether Defendant's wellness program violates ERISA and the Final Regulations;

e. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

g. The appropriate mechanisms to determine damages on a class-wide basis

22

58. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, inter alia, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

59. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

60. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By

contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

61.     Plaintiffs seek declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Kroger will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide equitable relief is afforded, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION
### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD
### (Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))

62.     Plaintiffs re-allege and incorporate herein by reference allegations 1–59 of this Complaint.

63.     Defendant unlawfully imposes a $75 per month tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges on participants based on a health-status-related factor without complying with the statutory and regulatory requirements for an outcome-based wellness program, Defendant violates ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This unlawful discrimination stems from Defendant's failure to offer a *reasonable* alternative standard that makes the "full reward" available to all participants who satisfy that standard, as required by ERISA and the Final Regulations. Defendant's Quitting Tobacco Journey program fails to qualify as a reasonable alternative standard for at least two independent reasons: first, it imposes an unreasonable 90-day completion deadline that is not

designed to promote health or prevent disease and instead operates to deter participation; and second, it fails to make the "full reward" available to all similarly situated individuals because its temporal restrictions result in participants who complete the same alternative standard during the same plan year being treated disparately in economic terms, with some receiving the full reward and others receiving less or nothing at all.

64.     A wellness program qualifies for the statutory safe harbor only if it is "reasonably designed to promote health or prevent disease" and makes the "full reward" available to all similarly situated individuals. 29 C.F.R. § 2590.702(f)(4)(iii)-(iv). Defendant's Plan violates both requirements. Therefore, Defendant cannot qualify for ERISA's statutory safe-harbor. 29 U.S.C. § 1182(b)(2)(B).

65.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's Quitting Tobacco Journey program imposes an unreasonable 90-day completion deadline that is not reasonably designed to promote health or prevent disease, and because it fails to make the "full reward" available to all similarly situated individuals by imposing temporal restrictions that cause participants who complete the same alternative standard during the same plan year to receive disparate economic treatment, the program does not satisfy the criteria required to qualify as a lawful "program[] of health promotion and disease prevention." *Id.* As a result, Defendant cannot avail itself of the statutory exception, and the tobacco surcharge is unlawful and discriminatory. Plaintiffs and Class Members are therefore entitled to declaratory and other appropriate equitable relief under ERISA § 502(a)(3).

<u>**COUNT II**</u>
**UNLAWFUL SURCHARGE – MISLEADING NOTICE OF REASONABLE
ALTERNATIVE STANDARD**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-
4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

66.     Plaintiffs re-allege and incorporate herein by reference allegations 1–59 of this Complaint.

67.     Defendant's tobacco surcharge program is not, and was not, a permissible wellness program because it failed to provide legally sufficient notice regarding the availability of a reasonable alternative standard, in violation of 29 C.F.R. § 2590.702(f)(4)(v) and 42 U.S.C. § 300gg-4(j)(3)(E). Although Defendant's Benefits Resource Guide ("BRG") referenced the Quitting Tobacco Journey program as a reasonable alternative standard, the notice failed to accurately disclose participants' rights because the program described was not, in fact, a compliant reasonable alternative standard under ERISA.

68.     The BRG describes the Quitting Tobacco Journey program as the pathway through which participants may avoid or recover the tobacco surcharge, but the program as described imposes an unreasonable 90-day completion deadline and temporal restrictions that prevent some participants who complete the same alternative standard during the same plan year from receiving the same, full reward. A notice that identifies a noncompliant program as the available reasonable alternative standard does not satisfy ERISA's requirement to disclose "the availability of a *reasonable* alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). Put differently, disclosing the availability of an unlawful or materially deficient alternative is no disclosure at all

69.     The Final Regulations require plan materials describing the terms of an outcome-based wellness program to disclose the availability of a reasonable alternative standard that allows participants the opportunity to qualify for the same reward. 29 C.F.R. § 2590.702(f)(4)(v).

Kroger's notice failed that requirement because it directed participants to a program that, by design, denied some participants the same reward available to others based solely on arbitrary timing restrictions. Participants who enrolled later in the year, or who required more than 90 days to complete the program, were not informed of any alternative means to obtain the same full reward during the same Plan year. By describing a noncompliant and economically disparate pathway as the "reasonable alternative standard," Kroger failed to provide the notice ERISA requires.

70.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. See 29 U.S.C. § 1182(b). Because Defendant's notice used discretionary language that misrepresented participants' right to the full reward, the notice failed to satisfy the requirements of 29 C.F.R. § 2590.702(f)(4)(v), and Defendant cannot qualify for the statutory safe-harbor. The tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiffs and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT III**
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

71.     Plaintiffs re-allege and incorporate herein by reference allegations 1–59 of this Complaint.

72.     At all relevant times, Kroger was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan and its assets. The Plan's SPD confirms that Kroger, as Plan Sponsor, is "Self-Funded" and has "the sole

responsibility to pay, and provide funds, to pay for all Plan benefits," and that Kroger "is solely responsible for the benefit plan design and funding payment of Benefits."

73.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

74.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose, upon information and belief, to use participant contributions to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using those funds to offset the service-fee payments it was obligated to make to fund the Plan. The SPD confirms that "[b]enefits under the Plan are funded by the payment of service fees required by the Plan Sponsor" and that required participant contributions "are used to partially reimburse the Plan Sponsor for service fees under the Plan." Plaintiffs' paystubs confirm that the tobacco surcharge was collected as a before-tax deduction alongside their ordinary premium contributions, and such withheld amounts became Plan assets upon collection under 29 C.F.R. § 2510.3-102. Defendant breached its fiduciary duty by assessing and collecting the surcharge in violation of federal law and the Plan's own terms and then applying those amounts to reduce, dollar-for-dollar, Kroger's own funding obligations. Upon information and belief, Kroger further profited by retaining the surcharge amounts in its own

corporate accounts, earning float and interest, before those amounts were used to reduce Kroger's service-fee obligation.

75.     Year after year, Defendant acted as administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and as a fiduciary within the meaning of 29 U.S.C. § 1002(21), exercising discretionary authority over the management and administration of the Plan, including over the Plan's tobacco-surcharge and wellness-program features. Defendant exercised that discretion in deciding how surcharge proceeds would be handled once withheld from participants' wages, directing those proceeds to reduce its own funding obligations rather than augmenting Plan resources. Defendant also controlled whether participants could obtain the "full reward" of avoiding the surcharge for the Plan year and controlled the content of the notices and alternative-standard disclosures required by 29 C.F.R. § 2590.702(f)(4)(v).

76.     Upon information and belief, Defendant controlled and disseminated to all employees the BRGs and other Plan communications discussing the premium differential but failed to provide compliant notice as required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). Kroger further failed to conduct periodic or prudent reviews of its surcharge program, its wellness program, and the related participant communications—notwithstanding the SPD's own representation to participants that they are "entitled to certain rights and protections under [ERISA]"—to ensure compliance with ERISA and its implementing regulations. Instead, Kroger administered a structurally defective wellness program, year after year.

77.     Kroger breached its fiduciary duties of loyalty and prudence by administering a Plan that did not conform to ERISA's antidiscrimination requirements, by using unlawfully withheld surcharge amounts to reduce its own funding obligations, and by failing year after year

to review and correct the terms of the Plan and the disclosures made to participants. These breaches are incompatible with ERISA's core fiduciary mandates.

78.     As a result of the unlawful surcharges, Kroger enriched itself at the expense of the Plan and its participants. By deducting these amounts directly from participants' paychecks under a wellness program that failed to satisfy § 300gg-4's notice requirement, Kroger secured financial savings for itself while participants bore increased costs. Defendant's deficient communications failed to notify participants of a *reasonable* alternative standard, as required, reducing the likelihood that participants would invoke a reasonable alternative standard and thereby maximizing the surcharge revenue available for Kroger to apply against its own funding obligations. In this way, Defendant transformed what ERISA contemplates as a bona fide wellness program into a mechanism for self-enrichment contrary to 29 U.S.C. § 1104(a)(1)(A).

79.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and applying those funds to reduce its own funding obligations—obligations the SPD makes Kroger's "sole responsibility"—Defendant caused the Plan to engage in a transfer of Plan assets to, and use of Plan assets by or for the benefit of, a party in interest, in violation of 29 U.S.C. § 1106(a)(1)(D). Kroger is a party in interest under 29 U.S.C. § 1002(14) as both the Plan Sponsor and a fiduciary exercising discretionary authority over Plan assets. By retaining and applying the surcharge amounts to offset its own funding obligations, Kroger dealt with Plan assets in its own interest and for its own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). The surcharge amounts should have been retained within the Plan's funding structure rather than displacing Kroger's required service-fee payments. Upon information and belief, Kroger benefitted from the float on those amounts at the expense of the Plan and its participants.

80. The Plan suffered losses as a result of Defendant's conduct. The SPD imposes on Kroger "the sole responsibility to pay, and provide funds, to pay for all Plan benefits," a funding obligation Kroger partially satisfied with surcharge dollars withheld from Plaintiffs' and other participants' wages rather than with Kroger's own corporate assets. But for Defendant's use of the unlawful surcharge amounts to reduce its required service-fee payments, the Plan would have received both the surcharge amounts (as participant contributions) and the full measure of Kroger's required funding. Defendant's conduct thus deprived the Plan of resources to which, under its governing documents and applicable law, it was entitled.

81. Further, the SPD informs participants, "you are entitled to certain rights and protections under [ERISA]." By structuring and administering a tobacco-use surcharge that failed to satisfy ERISA's wellness program rules under ERISA § 702, 29 U.S.C. § 1182 and PHSA 2705, 42 U.S.C. § 300gg-4, and the Final Regulations, Defendant violated both ERISA and the Plan's own terms requiring administration in compliance with ERISA.

82. Because the Plan collected and retained participant contributions imposed in violation of those provisions, Defendant breached its fiduciary duties under ERISA § 404(a)(1)(D) to administer the Plan in accordance with its governing documents and applicable law, and caused losses to the Plan within the meaning of § 409(a).

83. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

84. Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief

31

as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## COUNT IV
### BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
### (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)

85. Plaintiffs re-allege and incorporate herein by reference allegations 1–55 of this Complaint.

86. At all relevant times, Kroger was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan and its assets. The SPD provides that Kroger, as Plan Sponsor, is "Self-Funded" and has "the sole responsibility to pay, and provide funds, to pay for all Plan benefits," and that Kroger "is solely responsible for the benefit plan design and funding payment of Benefits."

87. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

88. Rather than acting solely for participants' benefit, Kroger administered a noncompliant wellness program that imposed unlawful tobacco surcharges, withheld millions of dollars directly from participants' paychecks, and failed to ensure that participants received the full reward and the notice protections required under 42 U.S.C. § 300gg-4(j)(3) and 29 C.F.R. § 2590.702(f)(4)(v). Through these acts, Kroger enriched itself at participants' expense, using

participant funds to partially reimburse itself for the service fees that, under the SPD, fund "all Plan benefits."

89.     Upon information and belief, Kroger designed, controlled, and disseminated the BRGs and other Plan communications describing the tobacco surcharge. Those materials described the terms of the wellness program within the meaning of 42 U.S.C. § 300gg-4(j)(3)(E) but omitted the disclosures required by 29 C.F.R. § 2590.702(f)(4)(v). Kroger also failed to conduct prudent reviews of its surcharge and wellness program, and of the related Plan communications, to ensure ongoing compliance with ERISA and its implementing regulations.

90.     By operating a wellness program that did not satisfy ERISA's nondiscrimination and disclosure requirements, Kroger acted disloyally and imprudently. It used participant contributions withheld through the unlawful surcharge to reduce the service-fee payments required of it under the Plan—payments that the SPD identifies as Kroger's "sole responsibility"—and misled participants through communications concerning their right to a full reward under a *reasonable* alternative standard. Each of these actions constituted a breach of Kroger's fiduciary duties under 29 U.S.C. § 1104(a)(1)(A)–(D), and Kroger's use of withheld participant contributions to satisfy its own funding obligations constituted self-dealing in violation of 29 U.S.C. § 1106(b)(1).

91.     By retaining the proceeds of unlawful tobacco surcharges and applying them to reduce its own funding obligations under the Plan, Kroger engaged in a transfer of, and use by or for the benefit of a party in interest of, assets of the Plan, in violation of 29 U.S.C. § 1106(a)(1)(D). Kroger is a party in interest under 29 U.S.C. § 1002(14) as both the Plan Sponsor and a fiduciary exercising discretionary authority over the Plan.

92.	Defendant breached its fiduciary duties to Plaintiffs and the Class by: administering a wellness program that violated ERISA's nondiscrimination and disclosure rules; failing to provide accurate and complete disclosures concerning participants' rights to a reasonable alternative standard, thereby depriving Plaintiffs of the ability to make informed choices; failing to prudently review and correct the program's structural defects despite repeated plan-year renewals; and acting in its own financial interest rather than in the exclusive interest of participants and beneficiaries. These breaches caused Plaintiffs and members of the Class to bear unlawful surcharges that shifted costs to participants and away from Kroger. Had Defendant complied with its fiduciary duties, it would have identified the deficiencies and taken steps to correct them.

93.	Further, the SPD informs participants that they are "entitled to certain rights and protections under [ERISA]." By structuring and administering a tobacco-use surcharge that failed to satisfy ERISA's wellness-program rules under 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4, and 29 C.F.R. § 2590.702, Defendant violated both ERISA and the Plan's own terms requiring administration in compliance with ERISA.

94.	Because the Plan collected and retained participant contributions imposed in violation of those provisions, Defendant breached its fiduciary duties under ERISA § 404(a)(1)(D) to administer the Plan in accordance with its governing documents and applicable law. Plaintiffs and the Class suffered individualized injuries from these breaches for which appropriate equitable relief is available under 29 U.S.C. § 1132(a)(3).

95.	As a direct and proximate result of these breaches, Plaintiffs and similarly situated participants bore unlawful surcharges deducted from their wages, were deprived of information to which they were entitled under ERISA's implementing regulations, and were denied equal and nondiscriminatory treatment under the Plan's terms and applicable law.

96.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs and the Class seek appropriate equitable relief necessary to redress Defendant's fiduciary breaches, including: (a) equitable restitution of surcharge amounts that are traceable to specific funds or property in Defendant's possession, (b) an accounting of profits and disgorgement of profits Defendant obtained through its use of unlawfully withheld participant contributions, (c) imposition of a constructive trust or equitable lien over amounts traceable to Defendant's wrongful conduct, and, (d) while not sought as a vehicle to compel the payment of money damages, declaratory relief, including a declaration that Defendant's wellness program and Plan materials violate 42 U.S.C. § 300gg-4 and 29 C.F.R. § 2590.702(f)(4)(v).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and request that the Court award the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-

discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory relief as necessary and appropriate, including ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate equitable relief, such as an Order requiring Defendant to return the unlawful and discriminatory surcharges it has already taken.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L.  An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: April 29, 2026                                    Respectfully submitted,


/s/ *Philip J. Krzeski*
_____

Philip J. Krzeski (OH #0095713)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S, Ste. 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
*pkrzeski@chestnutcambronne.com*

**SIRI & GLIMSTAD LLP**
Oren Faircloth (*pro hac vice* forthcoming)
William H. Payne, IV (*pro hac vice* forthcoming)
James Catania (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com
E: jcatania@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*